BRUGAL & Co., *C. por A.*, Petitioner and Appellant, *v.* RA-
FAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Respondent
and Appellee.

No. 8975. Argued December 19, 1944.—Decided May 4, 1945.

*Géigel & Silva* 'for appellant. *Jesús A. González, Acting Attorney General,* and *F. A. Rodríguez Forteza, Deputy Attorney General,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

The Borinquen Refining Co. was the owner of a rural property of six acres (*cuerdas*) situated in the ward of Monacillos, Río Piedras. Upon default in the payment of the taxes corresponding to the years 1927 to 1931, a distraint proceeding was instituted and subsequently a tax sale was held on January 16, 1932, wherein the property was awarded to the People of Puerto Rico for $8,380.42, which was the amount of the delinquent taxes, surcharges, and interest. In 1934 the Commissioner of the Interior leased the property to Brugal & Co., *C. por A.,* for a period of 15 years at an annual rental of $640. Brugal & Co., *C. por A.,* has been since October 11, 1943, assignee of the rights and shares belonging to Borinquen Refining Co. and of those belonging to Banco Comercial de Puerto Rico, as mortgagee with a recorded lien encumbering the property for $60,000.

Relying on the aforesaid facts and on the provisions of § 348 of the Political Code, as amended by Act No. 11 of April 10, 1943 (Laws of 1943, p. 32), Brugal & Co., in its capacity as assignee of the rights and shares of Borinquen Refining Co. and of the Banco Comercial de Puerto Rico, sought from the Treasurer of Puerto Rico as well as from his agents the redemption of the property, and to that end it deposited with the Collector of Corporations of the Treas-

ury Department a certified check for $17,294.65, which amount represented the liquidation made by Brugal & Co. of the property taxes owed to the Treasury from the date of the tax sale until December 31, 1943, together with interest at 6 per cent per annum, surcharges, etc., said check not being accepted by the Treasurer who informed Brugal & Co. that the same was at its disposal until it were decided whether or not the redemption sought was proper.

The Treasurer of Puerto Rico made no decision as to the redemption sought and Brugal & Co. filed a petition in the District Court of San Juan for the issuance of a writ of mandamus against said officer, directing him to grant the redemption of the property in favor of the petitioner and to accept the deposit made. The case was submitted upon a stipulation of facts and the issue involved was limited to two questions, to wit:

"(a) That the defendant alleges that the petitioner is not entitled to the redemption sought because the assignment made in its favor by Borinquen Refining Co. and by Banco Comercial de Puerto Rico was effected on October 11, 1943, that is, eleven years subsequent to the date of the certificate of the purchase of the property in question in favor of the People of Puerto Rico, it being understood by the defendant that the only persons entitled to redeem it under the provisions of Act No. 11 of April 10, 1943, are those entitled to redeem it within the year after the issuance of the certificate of sale; it being understood and alleged by the petitioner, on the other hand, that it is entitled to the redemption because it was the assignee of the owner of said property at the time of the tax sale and within the year after the issuance of the certificate of sale, that is, Borinquen Refining, Co., and of the mortgagee of said property at the time of the tax sale and within the year after said issuance of the certificate of sale, that is, Banco Comercial de Puerto Rico.

"(b) That the defendant alleges that the petitioner is not entitled to the redemption sought because in his opinion the property in controversy is being used by the People of Puerto Rico by reason of it being leased to the petitioner itself which pays the rental to the Government of Puerto Rico; it being understood and alleged

on the other hand by the petitioner that the contract of lease of said property does not mean that the property is being used by the People of Puerto Rico and, further, that the only consequence resulting from the redemption of the property in favor of the petitioner might be that the latter would be bound to respect the contract of lease of the People of Puerto Rico with petitioner itself, it being affirmatively alleged by the petitioner in this stipulation that it is willing to waive all the rights and interests which it holds in said contract of lease with the People of Puerto Rico if the redemption were granted because then the petitioner would appear in both capacities as owner and lessee of the property.''

The lower court denied the petition for mandamus and decided both questions in favor of the defendant. The petitioner appealed.

Section 348 of the Political Code, as amended by Act No. 11 of April 10, 1943, provides in its pertinent part as follows:

''That the owner, on the date of the sale, of any real property hereafter sold to another natural or artificial person or to The People of Puerto Rico, for taxes, his heirs or assigns, or any person who, on the date of the sale, may have any right or interest therein, or his heirs or assigns, may redeem the same within the period of one (1) year from the date of the issuance of the certificate of purchase, by paying to the internal-revenue collector in whose office the property was sold, or to the purchaser, his heirs or assigns, the full amount of the purchase money, with interest at the annual rate of six (6) per cent from the date of the sale, together with all costs accrued and taxes due to the date of the redemption. . . . When the property has been adjudicated to The People of Puerto Rico, the Treasurer shall, after the expiration of one year from the date of the issuance of the certificate of sale, accede to the redemption thereof by any person entitled to redeem it within the year, if, at the time the redemption is requested, the property is not being used by The People of Puerto Rico or has not been sold or transferred by it, and the person requesting the redemption previously deposits in the corresponding office of the internal-revenue collector the amount for which the property was adjudicated to The People of Puerto Rico, with interest at the rate of six (6) per cent a year from the date of the sale, together with all accrued

costs and the taxes that would have been imposed on said property if the same had remained in the hands of any taxpayer, with the surcharges and interest thereon; *Provided,* That in these cases, after the Treasurer has acceded to the redemption, the certificate of redemption shall be issued and the sale shall be cancelled in the Registry of Property in the same manner as prescribed in this section for cases of redemption within the year.''

A careful examination of this Section discloses that the same embraces two situations, to wit: (1) That any person who is the owner of the property on the date of the sale to another natural or artificial person or the The People of Puerto Rico, his heirs or assign or any person who on the date of the sale may have any right or interest therein or his heirs or assigns, may redeem within the period of one year from the date of the issuance of the certificate, and (2) that that same right of redemption is extended to those same persons when more than one year has elapsed after the date of the issuance of the certificate and when the property has been adjudicated to the People of Puerto Rico.[1]

In our opinion, the lower court erred in deciding that ''the only persons entitled to redeem, after the expiration of the period of one year, are those who have some right or interest in the property or properties publicly sold at the time of the sale or within a year thereafter.'' This construction excludes the right of redemption to those natural or artificial persons who had inherited or were assignees of the owner after the expiration of one year after the sale. The laws which we have cited in the margin, as well as Act No. 11 of 1943, aim to extend the right of redemption, when more

---

[1] The amendment of § 348 of the Political Code by Act No. 11 of 1943 had the effect of codifying permanently what was commonly done by the Legislature in granting extensions of one year to redeem those properties which had been awarded to the People of Puerto Rico. To that effect see the following Acts: No. 3, approved April 2, 1932 (Laws of 1931–32, p. 172); No. 23, approved April 15, 1935 (Laws of 1935, p. 186); No. 121, approved May 13, 1937 (Laws of 1936–37, p. 283); No. 81, approved May 6, 1938 (Laws of 1938, p. 200); No. 85, approved April 29, 1940 (Laws of 1940, p. 578); and No. 17, approved April 9, 1941 (Laws of 1941, p. 356).

than one year has elapsed after the sale and award to the People of Puerto Rico, to those same persons who were entitled to redeem within the period of our year.[2] That the defendant himself gave such a construction to the Act is evidenced by circular letter No. 40, addressed to the Collectors of Internal Revenue on December 15 of 1943 (Exhibit B of the defendant) wherein, upon explaining the scope of Act No. 11 of 1943, it was stated:

"According to the law there are two classes of redemption; the redemption within the year after the issuance of the certificate of purchase, and the redemption after the expiration of said period.

"The persons who may redeem are the same in both cases. In both cases the persons entitled to redeem are the following:

"1.—the owner of the property at the time of the tax sale;

"2.—the heirs of the owner of the property at the time of the tax sale;

"3.—the assignee of the owner of the property at the time of the tax sale, that is, the person to whom the owner at the time of the tax sale has assigned his right;

"4.—the heirs of the assignee mentioned in the preceding paragraph;

"5.—any person who at the time of the tax sale had any right or interest in the property; but not a remote or future interest or right, but said right or interest must be real and should have existed at the time of the tax sale;

"6.—the heirs of the person who at the time of the tax sale had any right or interest on the property;

[2] An example that this has always been the legislative intent appears in § 2 of Act No. 17 of April 9, 1941, which provides:

"Section 2. Any heir or assignee of the person in whose name the property was auctioned, or any person who had any right or interest in the property sold at auction, when said property was awarded to The People of Puerto Rico, shall have the right of redemption determined in Section 1 of this Act."

"7.—the assignee of the person who at the time of the tax sale had any right or interest in the property;

"8.—the heirs of the assignees mentioned in the preceding paragraph 7."

In *Puerto Rico Ilustrado* v. *Buscaglia,* decided today, *infra,* p. 870, we ratified our previous decision and cited other authorities as to the scope that should be given by the courts, as a guide to the construction of a statute, to the regulations approved by the Treasurer in connection with the tax laws when said regulations have been in force for a long time. In the present case it is true that the circular letter of the Treasurer establishing the manner in which the Collectors of the Internal Revenue should construe Act No. 11 of 1943 was sent a few months after the approval of the Act; however, this fact may not operate against its judicial consideration. On the other hand, in 3 Sutherland, Statutory Construction (3d ed.) 310, it is stated: "However, such regulations are given great weight by the courts in resolving doubtful meaning of the taxing laws, and this is especially true *where such regulations have been formulated contemporaneously with the enactment of the statute,* and have been long in usage." (Italics ours.) In a note to the words in italics, the case of *Norwegian Nitrogen Products Co.* v. *United States,* 288 U. S. 294, 77 L. ed. 796 (1933), is cited, wherein, at p. 311, Mr. Justice Cardozo discusses the scope that should be given to the administrative rule of construing a tax law and concludes by saying: "The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion. of making the parts work efficiently and smoothly while they are yet untried and new."

Under paragraphs 3 and 7, *supra,* there is no doubt that Brugal & Co. was entitled, as assignee of Borinquen Refining Co. and of Banco Comercial, who were owner and mortgagee, respectively, at the time of the tax sale, to redeem

the property. If Borinquen Refining Co. or the Bank had that right under Act No. 11 of 1943, when they sold or assigned their rights and interests, they sold and assigned said right to Brugal & Co. This was decided in *Benítez* v. *Llompart,* 50 P.R.R. 641: "When real property is adjudicated to the People of Puerto Rico in payment of due taxes, the taxpayer has a transferable right or interest in the property, an equitable title which gives him the right to redeem it. This right to redeem is what he may convey and what he does in fact convey to one who purchases the property from him with notice of the adjudication in favor of the People of Puerto Rico." (Syllabus 4.)

The lower court erred in deciding the first question raised under letter (*a*) of the stipulation, *supra,* for there is nothing in the law that requires that the sale or assignment of the rights and shares of the person who could redeem within the year after the sale, has to be made within that same period of time in order to enable the purchaser or assignee to acquire the right to redeem the property.

Let us now consider the second question.

 Section 348, *supra,* provides that the property auctioned may be redeemed "if. at the time the redemption is requested, the property is not being used by The People of Puerto Rico or has not been sold or transferred by it . . ." The lower court decided that the redemption in this case did not lie because the property had been leased to petitioner herein for a period of fifteen years at an annual rental of $640 and therefore that the People of Puerto Rico was enjoying or deriving benefit from the property. It based its decision on the definition given by the dictionary to the words "to be useful" (*utilizar*) and "useful" (*útil*) to the effect that they meant "to take advantage of something" and "having power to produce benefit, advantage, fruit, or interest," respectively.

Even though the specific definition of a word used in an act may serve as a guide to determine the intention of the

Legislature in approving the same, there are cases wherein the nature of the act, taken as a whole, and the legislative procedure through which it passes at different times when amended, is what should be considered in order to fix adequately said intention.

Upon an examination of the Acts which we have cited in footnote No. 1, we find that in Act No. 3 of 1932 the exception contained in § 1 was thus expressed: " . . . provided said real property so sold was awarded at the sale to The People of Porto Rico, and has not been conveyed to third persons, or is not devoted to the service of the Insular Government or of the municipalities."

In Act No. 23 of 1935 the language was changed thus: " . . . provided that said properties have been awarded to, and are still held by, The People of Puerto Rico, and are not being used by the federal, insular, or municipal governments." It is obvious that the intention was to include the Federal Government in addition to the Insular Government and the municipalities. In this manner the language used in Acts Nos. 121 of 1937, 81 of 1938, 85 of 1940, and 17 of 1941, was preserved. When Act No. 11 of 1943, *supra,* was approved, the language was again changed, as we have seen, by eliminating all mention of the Federal Government and of the municipalities when the phrase "and are not being used by the federal, insular, or municipal governments" was substituted by "if . . . the property is not being used by The People of Puerto Rico . . ."

The change in the language used in these Acts is more of form than of meaning.

The predominant idea is that the property at the time it is redeemed should not be used by or devoted to services of the Government, not in the economical sense [3] which may be attributed to the words "to be useful" or "services,"

---

[3] See the scope given to the word "use" in connection with the Internal Revenue Act, in *Puerto Rico Ilustrado* v. *Buscaglia, supra.*

but in the sense that it is used by The People of Puerto Rico for governmental purposes.

It is true that the word "useful" means something that produces advantage, fruit, or interest. However, this meaning may be limited to the field of civil law, according to the *Enciclopedia Jurídica Española,* vol. 30, p. 677, where it is said: "The term useful which juridically speaking refers and should refer to the civil law, *because the administrative law takes the standard of public utility as the equivalent to benefit,* is a notion susceptible to changes at will; according to the subjective or objective position in a specific case and time. . . . " (Italics ours.)

It follows, therefore, that if within the administrative law in regard to the terms "to be useful" or "useful" the standard of public utility should prevail as the equivalent to benefit, we feel bound to conclude that the construction given thereto represents the legislative intent expressed in different ways by the aforesaid Acts, to the effect that in order that there should exist a bar to the redemption of the property the same should be used or devoted to some service of public utility of the Government and the fact that there exists a contract of lease with the entity itself which has a right to redeem is not a legal bar to redemption.

Taking into consideration that the object of the laws which grant the right to redeem properties from tax sales is to obtain the payment of said taxes, it has been held that these laws should be construed liberally in favor of the person or entity to whom the right of redemption is granted. 4 Cooley on Taxation 3064, § 1538. This has always been the rule of construction in these cases and thus we find that in *Corbett* v. *Nutt,* 77 U. S. 464 (1870), the Supreme Court of the United States explained the general rule adopted by the jurisprudence in this manner: "It is the general rule of courts to give to statutes authorizing redemption from tax sales a construction favorable to owners, particularly

when they provide, as in the present case, full indemnity to the purchaser, and impose a penalty upon the delinquent."

According to this doctrine any doubt that may arise as to the question in controversy should be decided, construing literally the statute, in favor of the taxpayer or his assignee, inasmuch as The People of Puerto Rico sustains no injury whatsoever upon recovery of the whole amount of the taxes due, its interest, and surcharges. The lower court likewise erred, therefore, in deciding the second question raised.

Having reached this conclusion, the judgment should be reversed and another rendered instead ordering the defendant to grant the redemption sought by the petitioner upon payment of the amount for which the property was awarded to the People of Puerto Rico, together with interest and surcharges, and of the taxes that might have been levied on the property if the same had remained in possession of the taxpayer, together with interest and surcharges.